Mr. Crittenden Yes. May it please the Court. My name is William John Crittenden. I represent the appellant, Anwar Peace. I'd like to reserve ten minutes of my rebuttal. Though I understand I have to keep track of that myself. This is an appeal from a dismissal of an action brought in Federal court under Section 1983. In my opening remarks, I'd like to address the central due process question, which is the only issue on which the trial court actually ruled. Much of the problem we had in the trial court was keeping it clear about what this case is about and what this case is not about. This is not, correctly, a First Amendment case. We had an appeal in the State court in which my client's right to picket, protest, speak, and attend public meetings was at issue. The primary issue in that proceeding was whether or not the scope of the restrictions placed on Mr. Peace to prevent alleged harassment were consistent with the First Amendment. Obviously, it was our position that those restrictions were grossly excessive. This case became the proverbial Federal case when it ceased to be about the First Amendment and became about the intentional misuse of power by the highest-ranking law enforcement officials of the City of Seattle. This case is brought under Section 1983 to vindicate Federal constitutional rights, and the right we're talking about is procedural due process. The First Amendment might be the source of all of our political liberty and freedom, but the First Amendment is not safe if the court system does not comply with due process. But you're not challenging the court proceeding. You're not challenging or not suing the court for understandable reasons. Yes, Your Honor. You're suing the people who filed this lawsuit, the one who applied for the restraining order. The ex parte proceeding in State court, yes. Right. Now, why are those the appropriate people to sue with respect to procedural due process problems? Excuse me? Why are they the appropriate? Well, for one thing, Your Honor, the forum is actually immune, as I'm sure you're aware. The court that rules on this is not subject to suit. More importantly, the Lugar case and the Wyatt case and the Tristar case make it very clear that even private individuals who misuse the legal system in such a way that it creates a violation of due process are liable under Section 1983. In this case, we're talking about the process they work with State officers. That's correct, Your Honor. But the point I'd like to make is that the order that the police chief sent his personal lawyer, who was paid for a taxpayer expense, down to court to get. Is that in the record? Excuse me? Is it in the record that he was paid for by taxpayer expense? He spoke. He specifically stated that he was the representative of the police department when he was on the record in district court. Well, he is a representative of the police department, but was he paid by the police department to do this? The record doesn't say that, Your Honor, but he has never denied that he was acting on behalf of the police department. He is, in fact, the police department's attorney. And more importantly, to address. In-house attorney? Excuse me? In-house attorney? Yes. I don't believe he answers directly to Tom Carr, who is the elected city attorney. I'm not quite sure what the arrangement is. I believe he is employed by the police department and answers to the chief. The Seattle City Attorney's Office represents the city in this case, but they are not a defendant. To get to Judge Elricon's question, the other important part of the state action here is not only that the people I have sued are state actors, but what they got was a court order which allowed them to send a huge number of police officers who answer to Chief Kerlikowski out to arrest my client whenever they feel like it. Well, you know, it's kind of an interesting problem because he happened to be the chief of police, and that may have been why Mr. Peace was interested in protesting near him or whatever. But this statute, I mean, he sought personal, he sought protection for his personal privacy and safety. That's his story, Your Honor, yes. Well, yes, but that's what the statute allows, is somebody to go into court and say, look, I'm being harassed, and I need a temporary restraint. And a full hearing can be had later. Your Honor, every court that has addressed the question has stated that these state anti-harassment mechanisms can only be used ex parte on a particular showing of why it has to be ex parte. We're wandering from one problem to another problem. We're sticking to the state action problem right now. Your Honor, as I said earlier, under Lugar, Mr. Port could be a private attorney and he would be liable. Chief Kerlikowski could be a private individual and he would be liable. It's absolutely clear under Wyatt and Tristate and other cases in that venue that if you use ex parte proceedings in a manner to violate due process, you are liable under 1983. That isn't even a question that's on the table anymore. And Lugar says, when we're talking about state officials, the two-prong inquiry that you would normally do to determine whether or not you've really got state action collapses into a single question, which is, are these people state officials? Well, yes, they are. They're the police chief. Well, see, the oddity here is that you're asserting a procedural due process question. And I guess it seems to me that it's the court, if anybody, who deprived your clients of procedural due process, because at the end of the day, it was the court that issued the injunction ex parte. It wasn't these guys who did it. They sought it, for sure. But the court was, in effect, a supervening cause that allowed it to happen. Your Honor, that theory doesn't – that's an interesting argument, but it's not consistent with the existing law. The existing law is you can get a court order in violation of due process, and the fact that it was issued by a court doesn't make a difference. And I would like to point to procedural due process. What other case should we look at to see that? Tri-State, Wyatt, Lugar. Okay. Procedural due process. So procedural due process cases. Look at Armendariz. Armendariz actually did not involve a court order. It involved basically what are essentially warrants. But these are cases involving ex parte receiving of property, seizure of cars, things like that, that people do pursuant to court order. The State court, in a case called Van Blaerkamp v. Cronenberg, held that an attorney, Don Cronenberg, acting on behalf of a private client, had committed a violation in 1983. And that decision was based on Van Blaer – on Wyatt and Lugar, and that is the law. Let me – let me switch gears from that to the – in effect to the merits to get your – your response, because, you know, obviously, he does not allege a violation of his First Amendment rights. So what we're talking about here is an order that was obtained ex parte or that was good for 14 days restraining him from getting within 500 feet. I have to correct the Court, because you're heading down the same mistaken path that the trial court headed down. Okay. Well, maybe. Okay. But – but it is for 500 – 500 feet – within 500 feet of the – of the chief of police, based on, in part, a showing that he had violated a previous order to the same effect, that seems to me to be primarily in the nature of a time, place, and manner restriction. That was – that he could have a complete hearing on in 14 days, or perhaps less, if he go in and ask for an order-shortening time, which I'm sure is available. Well, Your Honor, a couple of points raised in your one – two questions to get to. One is, under Carroll, you cannot restrict. Well, yes, but you see, Carroll is – is a case of direct prior restraint on core political speech. Let me explain how that issue is addressed here. The judge asked in a – in a – in a letter ruling to tell – to tell the Court what the role of Carroll in the First Amendment was. Now, bear in mind, at the time, the State court was still – still playing with my client's First Amendment rights. Well, which suggests to me it's kind of a younger abstention should have applied. But never mind. It's over. Your Honor, I am aware of the younger abstention doctrine, and that is part of the reason why I did not plead a violation of the First Amendment. Your first question, obviously, would be, Mr. Crittenden, don't you have a younger abstention problem? And I would say, yes, Your Honor, I do. That's why I did not allege a violation of the First Amendment. But what is important – and the judge finally, after three rulings, figured out what we were talking about in his last ruling, said, yes, there was a deprivation of First – Well, I'm slow, too, so spill it out. Sorry. There was a deprivation of his First Amendment rights. Okay. Now, a deprivation, we mean he – He didn't say that. He said there wasn't one. He said in his final ruling on reconsideration that there was. If you look at the actual ruling, the memorandum of decision denying reconsideration, he quite clearly says that there was a deprivation of First Amendment rights. And he's right. There was. He says that on balance, it's constitutional, but he does not stick to his original position that there was no deprivation. Well, that's a verbal issue. But, I mean, the way to explain it that's, I think, clearer is that there were First Amendment speech rights at stake, and that that feeds into the procedural due process question. Exactly, Your Honor. That is the point I was trying to make, and the way I pled the case, and it was unfortunate that we finally get to this forum where we finally understand what we're talking about. The liberty interest that is at stake, which was undisputedly taken away from my client, is his political liberty. For Younger and a bunch of other reasons, I didn't allege that the other one was at stake. You know, the way I phrased my question, I thought I included that as an assumption when I said this is very similar to a time, place, manner restriction. So, sure, he was not allowed to come within 500 feet of the chief of police, but there is nothing to restrain him from blabbering anything he wanted to in any media or in any other place as long as it was more than 499 feet away from the chief. Well, let's assume that's a fair characterization and look at some of what one of the important facts. But it must have some effect on the balancing test. Well, let me make one clear point here, Your Honor. One month before the order was issued, Defendant Leo Port and I were in front of a commissioner of the Washington Court of Appeals. And in order to try to convince the commissioner that we didn't really have a grossly overbroad order pending and to try to persuade him not to grant review, Mr. Port unambiguously stated that my client was permitted to go to City Hall to attend city council meetings. That was sufficiently important to the commissioner that he stated it in writing in his order, and that is in the record. Now, when Mr. Port went back down to the district court, he did not provide a copy of that order to the court. He didn't tell the court the truth about why the case had been dismissed. He didn't bother to mention that he had just told the commissioner of the court of appeals that my client was not to be arrested if he went to the court, went to city council. Kagan. I understand that you and Mr. Port and Mr. Peace and Mr. and the chief of police have not been getting along well. I'm getting along just fine. I mean, I understand that there's a lot of tension here, okay? That's clear. But just on a pure, discreet legal analysis that I'd like an answer to my question, and that is, you know, why is this such an infringement of his due process right? Because on balance, there's nothing to justify the ex parte proceeding. I was sitting in my office with a phone a foot away when the order was given. That's a matter of the fact that the state trial court goofed. Yes, but the state trial court was not told the truth, Your Honor, and that's part of the problem with ex parte proceedings. Did Mr. Port tell the trial court that he had a lawyer? Did he tell him how to reach me? Amply on record as a, as not being pleased with ex parte proceedings. But this statute allows it for a reason which is kind of discreet to this kind of statute. I mean, you know, it's not like going in for, for an asset seizure or whatever. I mean, this is for somebody's personal safety and privacy reasons. So if you balance it out, again, same question, time, place, manner, 14 days, maybe an order shortening time, why is that a deprivation of procedural due process? The Blaisdell court, which the city, the Blaisdell decision, which the city cites is pretty much the watershed case on exactly that question, Your Honor, and Blaisdell was confronted with a person who wanted the statute declared unconstitutional. And the court said, no, no, I've looked at this carefully, and I'm sure that what they meant was a statute that comports with due process. And that means that you're not going to get an ex parte domestic violence order, unless there's some reason it has to be ex parte. That is stated in the ethical rules, it's in civil rule 65, it's in a million cases. You can't go into court and get an ex parte order for no reason. And, and Blaisdell agrees with our position. So does Baker, so does Nolet, so does Ledgerwood. Every single court that has been asked, is it okay to go in and get a domestic violence order for no particular exigent reason whatsoever? The answer is no, it's not okay. And what makes this matter worse is there's no domestic relationship between Chief Kurlikowski and Anwar Peace. He's a political activist. And accepting as true everything they accuse him of, the worst thing he's ever done is he filled up his voicemail with rambling about articles in the newspaper and waved a cardboard sign, okay? That's, except as true, that he did these things. Does that justify throwing him in jail for going to city council meetings when the chief is not even there? See, the problem, the problem in a way is that you're, you're taking on what the Washington courts did, and we can't really take that on. We've got to decide as if it's such a blatant violation of his procedural due process rights. Actually, Your Honor, you can take that on. The cases say that there is a cause of action under Section 1983. As Judge Burson pointed out, I can't sue the tribunal, nor would I, because I don't think the tribunal did anything wrong. The tribunal was basically lied to and bowled over by the chief police personal attorney. I'm treading on your time. Oh, I'm sorry. You might want to save the rest of it. I don't know that the court seems to have any questions about the other issues of qualified immunity. Those were brought up. I would simply like to point out that I moved for summary judgment in this matter, and I believe that we are entitled to a remand which tells the district court that these defendants are, in fact, liable. I'll reserve the remaining of my time. Okay. Ms. Boatwright. Good morning, Your Honors. May it please the court, Rebecca Boatwright, representing Defendants Leo Port, Chief Kurlikowski, Seattle Police Department, and the City of Seattle. I think, Your Honor, you touched on the distinction in this case when you pointed out that the issue here really is a time, place, manner distinction. All the cases relied upon by the appellants are following the Snydak line of cases, in which it is well-established that before you can have deprivation of, in the form of a garnishment or prejudgment attachment, there does need to be pre-hearing notice and an opportunity to be heard. This case specifically does not follow the Snydak line of cases. This is more along the lines of the Matthews v. Eldridge analysis. Well, that's the question, not the answer, right? I mean, the question is really whether neither of those lines of cases apply, but rather the First Amendment line of procedural due process cases, and Carroll in particular. Well, and that raises an interesting point with respect to the due process claims. The procedural due process clause requires that when the government seeks to deprive a person of a constitutionally protected interest, the person must have the opportunity to be heard at a meaningful time and in a meaningful place. Now, when Leo Port went in the second time on the second anti-harassment order, which the district court chose to convert into a renewal of the first order, it had already been determined that the conduct that was sought to be restrained was not constitutionally protected. The statute at issue, RCW 1014, specifically expresses that constitutionally protected activity, i.e. free speech, is not within the scope of conduct that can be restrained by this statute. There's been a judicial determination that the conduct that was restrained was not constitutionally protected. Leo Port was aware of that when he went in the second time. The district court, having chosen to convert this into a renewal rather than a petition for a new order, as Leo Port had requested, basically converted the proceedings into being governed under the renewal provisions of RCW 1014-080 subsection 5, which presumes that the conduct will be the same as the conduct which has already been restrained and actually shifts the burden onto the respondent in that manner to prove that the conduct will not continue. It does not place a burden on Leo Port in this case to show that the conduct was harassing, was unlawful. That has already been determined in a judicial proceeding that was challenged on appeal as a matter of right to the superior court. The superior court affirmed the district court order, and the court of appeals denied discretionary review. And whether or not we want to go into the issue of whether or not the court of appeals might have accepted discretionary review is, had the order not been about to expire, you know, we can speculate all day as to what kind of procedural posture we could have gotten into. And I don't know the ramifications of it, that the commissioner's action was both because he understood it was going to expire, but also because he understood that it didn't apply to city hall meetings, city council meetings. And I'll be honest, I'm not entirely sure. I think the record before, the record in this case, which to the extent that it contains a record before the court of appeals is somewhat vague on that matter. My understanding is that Mr. Pease was permitted into city council meetings, but was not permitted within a certain distance of Chief Kerlikowske. So if Chief Kerlikowske were to be at a city council meeting, that would raise a concern. But my understanding is that this is the order that was eventually issued, or the renewed order, did cover city council meetings. If the chief was there. I believe so. Was there an arrest because of that, because of the second order? Your Honor, I'm my involvement in this case is very narrowly limited to the 1983 action. I don't know what's going on with the criminal matter. But regardless, since we already have a judicial determination that there was no constitutionally protected interest at stake, the question is, does due process even apply in this case? Again, since there was no infringement on his free speech, because, as the Court pointed out, there's not like Carroll, where there's an injunction sought pursuant to an entirely different set of circumstances where the content of speech is being infringed. It's Hornbook law that the restrictions on the right to free speech does not insulate the manner. I think for somebody from coming to city hall and speaking to the city council, to call that a form of speech is a little, an error in the sense that it's a unique form where you're not saying that somewhere else is not the same as saying it to the city council. I mean, if that's what we're dealing with, if we're saying he can't go to the city council like other citizens and get up before the city council and speak his piece, the fact that he can say the same thing in his house to someone else is really irrelevant. Your Honor, my understanding is he can say that in city council meetings so long as the chief of police is not there. All right. So if the chief is there and he wants to say something about the chief, he can do it to the city council. That's my understanding. And, again, that's an issue that's more properly brought up before the state court on appeal. I don't believe it's a proper issue. Oh, no, but it has to do with whether there is a First Amendment interest here that is something more than a question of where he's going to speak, because this is a forum that's only in one place at one time. It's not somewhere else, and the audience is nowhere else. And if that's so, then I think we need to get into a time, place, manner. Balancing, is his right to speak at a city council meeting in the presence of Chief Kurlikowski. And we – I know there's a – Is there – I mean, again, we're getting more into the state case, but is there a record of physical threats? There is a record that he identified on voicemail Chief Kurlikowski as being number one on his top five targets, that he advised Chief Kurlikowski that he had better watch his back, and that he approached Chief Kurlikowski at a very close distance while Chief Kurlikowski was walking with his 79-year-old mother, waving a cardboard sign in their face and shouting at them, and that there was concern by both Chief Kurlikowski for his own safety as well as, understandably, for his mother, who was, my understanding, was completely freaked out by this incident. Can we switch for a second to the state action issue? I mean, it would appear that there's just a string of cases which say that, you know, a private person seeking to implement, have enforced a defective statute or seeking a request that would impinge on somebody's procedural due process rights is a state action for purposes of 1983. Your Honor, I think all those cases also follow the SNIADAC line of cases addressing prejudgments, attachments, and garnishment, and where state officers are enlisted by those private parties for purposes of effecting a lien or enforcing a lien. The distinction between that is that those matters would fall under RCW injunctions that might be issued pursuant to RCW 7.4, .40, excuse me, which do follow, which is Washington's procedure in the event of a garnishment or a prejudgment attachment situation and specifically requires that exigent circumstances be shown in the event of an ex parte proceeding. This is an entirely separate statute. The manner by which notice is served is governed by statute. The question is why is it different for state action purposes? And I think what I heard you saying is that the difference is that in those other line of cases, the private party is trying to enlist not only the court, but a person on behalf of the court to actually accomplish the seizure. Is that what you're saying? I believe it's that an officer, a state officer is enlisted by the private party to enforce an arguably invalid order. In this case, there's no such, it's not the case that any order issued pursuant to 1014 is unconstitutional or that any, I just don't see the comparison between the SNYDAC line of cases in this case. This would completely use the order issues, it's going to be enforced by the police, right? It can be enforced by the police. It can be enforced by the sheriff. Okay. So those are state actors. So you're trying to invoke what the private person is doing is trying to get permission, trying to enlist state actors to work on his behalf. How is that constitutional? Well, I think that if that's the case, I think it completely emasculates the entire purpose of the statute. If somebody can go and ex parte and at the court's determination upon a showing that satisfies the court that immediate relief is warranted, obtain an order, and then be subject to a Federal action because that person sought to have the order served. Well, it may be because there's something wrong with the ex partiness of this when you have First Amendment issues at stake. But we're trying to figure out the state action issue. And I'm trying to get you to explain to me why this is different for state action purposes from the SNYDAC line of cases. You keep saying it's different, but why is it different? Well, it's an interesting question. And my answer to that is I can't articulate why precisely it's different except to point out the difference in intent and the caution that is contained in the statutes that govern prejudgment attachments where the potential invalidity of the order should be more apparent. I don't – I'll admit I do not – I cannot articulate an argument why enlisting the aid of a sheriff's deputy or a police officer to serve an order on somebody is – Is there any reason that you're aware of why Port and the chief of police are not state actors in themselves, just period? They did not obtain this order for the chief of police pursuant to any policy to protect the chief of police. It's a personal – it's him going in in his individual capacity seeking protection for his person both in the workplace and at home. But he uses a lawyer who is representing the police department, apparently. Yes. Mr. Port does. So – so – He's a counsel to the chief. And it's to keep away from him as a – as the chief of police, right? Well, it serves a legitimate purpose in that it allows the chief to perform his job without – But that's not the question. Well, let's put it – what we're trying to find out now is whether they were acting as state actors, either because they themselves were state actors when they went in or because invoking this process is sufficient to invoke state action given the case law in the area. And if, in fact, the person whom he was using a lawyer for the department on department time being paid by the department, he must have been a state actor. Otherwise, he was acting illegally. I would respond that he was – he may have been a state actor. He was not acting in excess of any authority granted to him by state law. And he did not – his actions were not made possible only because of any authority vested to him by state law. Well, probably it was because he was using a state-paid lawyer to do this. If he didn't do this, he would have had to go out and pay a lawyer. That's not true, Your Honor. He certainly could have gone in himself. I think this just boils down to what I think is completely immaterial to the case, is he's using – and I'll represent myself. I have obtained these orders on behalf of the mayor, because, frankly, it's a more judicious use of my time to do this than it is of the mayor's time to do this. Precisely because the mayor is the mayor that he can turn to you and say, go get me a state – one of these orders. If he wasn't the mayor and if he wasn't operating in his capacity as mayor, you presumably would say, you know, you're having a problem with your wife. I can't represent you. That's not my job. But if he's having a problem in his capacity as mayor, then you can and you do. If he came to you and said, get me a harassment order against my wife, what would you say? I would defer to Tom Carr to hear my report as to whether or not that would be an appropriate use of my on-the-clock time. And I think this is – it's an interesting point, but this – we do not need to get there, because the district court correctly dismissed this case on the procedural due process grounds. For this court to say that the Washington statute's procedure violates procedural due process with all due respect is not an appropriate inquiry for this court. That's something that the state needs to be given an opportunity to weigh in on. It's something that the highest court of the state needs to be addressed to the extent that this is a collateral attack on an order entered by the King County District Court, affirmed on appeal by the King County Superior Court, on which discretionary review is denied by the Washington Court of Appeals. It's entirely improper to collaterally attack that order in a U.S. district court. And I think that's where the trial court's – Isn't it also true that this – what happened here isn't allowed under state law either? Because it was – because it was a renewal, the ex parte authorization isn't even there? Pardon? Doesn't the state law not allow the ex parte authorization for initial orders, but not for renewed orders? I don't believe that's anywhere in this – in the statute. And, in fact, I think the statute – It says, upon receipt of the petition for renewal, the court shall order a hearing, which shall be not later than 14 days from the date of the order. And it goes on about that. If the order expires because timely service cannot be made, the court shall grant an ex parte order of protection. Now, for the initial anti-harassment protection, it does say that you can have an ex parte temporary anti-harassment protection order. So the state law seems to be quite the opposite of what you were suggesting. You were suggesting that in the renewal context, there's a stronger argument for an ex parte order, but the state law seems to be the opposite. I would say, if the statute's silent to that point, that your conclusion is not supported by the practice of the statute. It's very unsilent. It says that you have to have a hearing unless there – unless timely service cannot be made. Within 14 days from the time the petition is filed, the petition – no notice needs to be provided to the respondent that a petitioner is seeking to renew an anti-harassment order. Once the – once a petition is received, then notice must be granted to the respondent of the hearing. That's with regard to an initial one, Judge, not with regard to a renewal. Anyway, go ahead. I can speak to you from practice that it's always the case that you go into the clerk of the King County District Court, you state you would request a renewal of the order, and the clerk sets that the hearing at 14 days evidence serves. You're never before a judge in a renewal situation. And again, this was not – That's not relevant, but it does say there has to be a hearing. And because Leo Porte believed that he was not entitled to a renewal because the order had expired, he went in specifically requesting a new order, and it was the Court's and a – essentially a petition for renewal. That was done at the Court's initiative, not at Mr. Porte's suggestion. Let me ask you some questions back to Judge Rimer's initial question here about state action. Is Mr. Porte a city employee on the payroll by the City of Seattle? Yes, he is, Your Honor. So you are here representing the city and Mr. Porte because he's a city employee? That is true. When he filed this action, this restraining order, was he acting as a city employee representing another city employee? I don't know if it was his subjective intent to do this as a personal favor to Chief Kurlikowski or whether he viewed this as being within the course and scope of his duties. I can't speak to how – what he – What does the record show as to that? The record shows that he went in as a representative of Chief Kurlikowski.  If there are no further questions, I'll wait in my place. Okay. Thank you. I don't think so. Mr. Krugman. The city's position is somewhat of a moving target, and I have to respond to sort of the primary argument they made today, which is that what this order restrained was, by definition, not protected by the First Amendment because, after all, a state court had found that this order was constitutional. That's not a correct understanding of what the state court did. The restraining order to keep my client 500 feet away from City Hall was a remedy for specific acts of harassment. There is no determination by the trial court that it constitutes unprotected conduct to be at City Hall. The prohibition on being at City Hall is the remedy based on the assumption that he might do something not protected by the First Amendment if he's there when the chief shows up. The entire line of argument that the city started with this morning is just dead wrong. There was never a determination by the state court that it was entirely consistent with the First Amendment and caused no deprivation whatsoever to exclude my client from downtown. Now, is it pertinent that there was determination made in the early – if there was determination made in the early order that whatever his interests were were outweighed by the need for an order of this kind, and all they're looking for now is the same order again? Does that mean that his interest in appearing is a lot less because he's already been heard once on this subject? No, Your Honor. What – what – and again, this gets down to the distinction between the deprivation of the First Amendment right, which is the subject matter of the due process claim, and the underlying question, which is not presented to this court, of whether the trial court in the state correctly applied the First Amendment standards to the remedy. That issue was not ever brought to federal court for a variety of reasons. But what we do have, and we have it at ER 176, the very last decision the trial court made, he clearly says, okay, I get it. There was a deprivation of First Amendment rights because it does not constitute harassment to go to the city council and speak. That's just a remedy for something else. So now we know for sure that there was something he was – that was protected by the First Amendment that was taken away from him ex parte. Okay? So the idea that there isn't any First Amendment liberty interest being taken away is just not correct. Even the trial court didn't ultimately accept the city's argument on that point. I guess the question is whether he essentially already had a hearing on this, because he had a hearing with regard to the first round, or could have. Your Honor, he did not, as a practical matter, actually have a hearing. Bear in mind the state court proceedings were dismissed as moot. So we don't actually have a final judgment for res judicata or collateral estoppel purposes that anything the trial courts in the state did was actually correct. There's a presumption that, until overturned, that these things were correct. But the reason we are having this discussion this morning is because of the stunt pulled by the city of Seattle in pulling the plug on the appeal where we could have talked about Sniadak and the Schenck case in Madsen v. Women's Health Center and Grace v. United States. And we could have talked all day about the remedy for abuse of First Amendment speech. But this became your problem when it became a due process case. And what we're talking about here is an ex parte deprivation of free speech. And let me correct another point. The city is still wrong about what the order does. The city attorney, and this may be what she honestly believes based on her recollection of the record, says that it only applies when the chief is at city hall. That's not true. The order doesn't say anything about that. It says 500 feet away from his place of employment, period. He's subject to arrest the moment he tries to walk into the city council building. And when Mr. Port was on the record in front of the commissioner trying to prevent review from being granted by making it seem like the whole problem was going to go away in a month, he said, oh, no, he can go to city hall. And then when he goes into court stating on the record, I'm the legal advisor to the city police department. I would like an order. He walks out of there with an order which allows my client to be arrested at the drop of a hat. I want to respond to Judge Berzon's question with the court's permission. Judge Berzon, you asked a question about state action. And really, that is the point here, is that the resulting order gave the city law enforcement people who answer to these defendants carte blanche to arrest my client on 5th Avenue if they saw him. Now, if that's not assistance of state officials in depriving someone of a liberty interest, I don't know what is. In that theory, any private person applying for one of these orders would be in the same position. Absolutely. Okay. Thank you, counsel. Both of you, the matter just argued will be.
judges: Alarcon, Rymer, Berzon